UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDREA JOY LYONS, Pro Se; MARK GEERHART, Pro Se, | NO. 1:17-CV-3108-TOR |
| Plaintiffs, | ORDER DENYING PLAINTIFFS' MOTION TO STRIKE; ORDER GRANTING DEFENDANTS EAST VALLEY SCHOOL DISTRICT NO. 90, COLEEN CROWSTON, LISA BARTHELD, CAROLYN SAUVE, AND MELODY-ANN LUKE'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| EAST VALLEY SCHOOL DISTRICT NO. 90; COLEEN CROWSTON, In Her Official and Individual Capacity as Principal of East Valley Elementary School; LISA BARTHELD (Counselor) In Their Individual and Official Capacity; CAROLYN SAUVE (Admin. Assist.) In Their Individual and Official Capacity; and MELODY-ANN LUKE (RN) In Their Individual and Official Capacity, | |
| Defendants. | |

BEFORE THE COURT is Defendants East Valley School District No. 90,

Collen Crowston, Lisa Bartheld, Carolyn Sauve, and Melody-Ann Luke's Motion

for Summary Judgment (ECF No. 54) and Plaintiffs' Motion to Strike from

Evidence Production of Fraudulent Documents (ECF No. 64). The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, Plaintiffs' Motion to Strike (ECF No. 64) is **DENIED**. Defendants' Motion for Summary Judgment (ECF No. 54) is **GRANTED**.

## BACKGROUND

This action arises out of the Washington State Department of Social and Health Services' ("DSHS") referral and investigation of potential child abuse or neglect. ECF No. 22 at 2. Plaintiffs Andrea Joy Lyons and Mark Geerhart, proceeding *pro se*, filed an Amended Complaint on July 3, 2017 against Defendants DSHS and its employees, and Defendants East Valley School District and its employees. ECF No. 12. Plaintiffs allege constitutional violations under 42 U.S.C. § 1983 and state law claims. *Id.*

On January 30, 2018, Defendants DSHS and Francesca Guzman filed a Motion for Summary Judgment, seeking a complete dismissal of Plaintiffs' claims with prejudice. ECF No. 28. On March 2, 2018, Plaintiffs filed an Opposition to Defendants Motion for Summary Judgment/Motion for Summary Judgment, seeking summary judgment on their *Monell* claims[1]. ECF No. 36. On April 2, 2018, the Court granted Defendants' Motion for Summary Judgment and denied Plaintiffs' Motion for Summary Judgment. ECF No. 39. The Court dismissed

---

[1] *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978).

with prejudice Plaintiffs' action against Defendants DSHS and Francesca Guzman. *Id.*

On July 23, 2018, Defendants East Valley School District No. 90, Collen Crowston, Lisa Bartheld, Carolyn Sauve, and Melody-Ann Luke[2] filed a Motion for Summary Judgment as to all of Plaintiffs' claims. ECF No. 54. On August 16, 2018, Plaintiffs filed a Motion to Strike from Evidence Production of Fraudulent Documents (ECF No. 64) and a Motion to Expedite the Motion to Strike (ECF No. 65). The School District Defendants filed an objection to Plaintiffs' Motion to Expedite. ECF Nos. 66; 67 at ¶ 2. On August 24, 2018, this Court denied Plaintiffs' Motion to Expedite, finding that the disputed documents were best considered in conjunction with the School Defendants' Motion for Summary Judgment. EFC No. 72. Plaintiffs filed an Opposition to Defendants Motion for Summary Judgment/Motion for Summary Judgment on August 22, 2018 (ECF No. 68). On August 31, 2018, the School District Defendants filed a Motion to Strike Plaintiffs' Motion for Summary Judgment (ECF No. 74), arguing that the motion is untimely. On September 10, 2018, the School Defendants filed a Motion in Limine (ECF No. 81).

---

[2] These Defendants shall be referred to collectively as "School District Defendants" or "School Defendants."

# FACTS

The following are the undisputed facts unless otherwise noted.  For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed."  Fed. R. Civ. P. 56(e)(2).  Plaintiffs' statement of facts disputes the authenticity of various documents, but they fail to properly support these allegations.  ECF No. 69.  Therefore, the following facts are undisputed or deemed so due to Plaintiffs' failure to support their contrary assertions.

On September 11, 2014, DSHS received a report of suspected child abuse from the Yakima Regional Hospital concerning one of Ms. Lyons' children, C.T.  ECF No. 63 at ¶ 4.  Earlier that day, Ms. Lyons brought C.T. to the hospital after her husband, Kevin Teeman, told her that C.T. was in the car seat not belted in and fell forward onto the floor.  ECF No. 47 at 3.  Ms. Lyons was at work when this occurred.  *Id*.  The hospital reported that C.T. had a femur fracture.  *Id*.  Concerned that the "story doesn't seem to quite match the injury," the hospital referred C.T.'s injury to DSHS.  *Id*. at 3-4.  The referral was assigned to the Yakima County Sheriff's Office for investigation and to DSHS social worker Staci Foster.  *Id*. at 4.  Ms. Foster obtained C.T.'s medical records and attempted a home visit with the address given by the hospital, but it did not exist.  *Id*.

On the morning of September 12, 2014, Ms. Foster located and interviewed Ms. Lyons and Mr. Geerhart's children, J.G. and N.G., at East Valley Elementary School as part of the CPS investigation. ECF No. 63 at ¶ 4. Both J.G. and N.G. consented to being interviewed. *Id.* at ¶ 7. Colleen Crowston, the principal of East Valley Elementary School, was present during J.G.'s and N.G.'s interviews at the children's request. *Id.* at ¶ 8. Ms. Crowston did not ask questions or otherwise participate in the interviews. *Id.* Each interview lasted between 20 and 30 minutes. *Id.* at ¶ 9. When the interviews were finished, J.G. and N.G. returned to class. *Id.* at ¶ 10.

After completing the interviews, Ms. Foster made an unannounced visit to Ms. Lyons' residence with Yakima County Deputy Sheriff Leo Hull. *Id.* at ¶ 11. Ms. Lyons resides with her husband, Mr. Teeman, and her four children—J.G., N.G., C.T., and A.T. *Id.* at ¶ 12. Mr. Teeman is the father of A.T. and C.T., and Mr. Geerhart is the father of J.G. and N.G. *Id.* After arriving at the family home, Mr. Teeman led Deputy Hull and Ms. Foster to his shop where the two younger children, A.T. and C.T., were located. *Id.* at ¶ 13. Ms. Foster observed A.T. wandering the property alone out of sight of Mr. Teeman and C.T. was alone in the shop buckled to her car seat. ECF No. 47 at 5. Deputy Hull then took all four children, including J.G. and N.G., into protective custody due to the imminent risk of harm to the children. ECF No. 63 at ¶ 13. Shortly thereafter, Deputy Hull

transferred custody of all four children to CPS pursuant to the Child Custody Transfer form. *Id*. at ¶ 15. Ms. Foster then transported A.T. and C.T., the only two children home at the time, to the Yakima DCFS Office. *Id*. at ¶¶ 16-17.

Later that afternoon, CPS returned to East Valley Elementary School to collect J.G. and N.G. from school and take them to the Yakima DCFS Office.[3] *Id*. at ¶¶ 18-29. Defendant East Valley School District has a Board Policy and Procedure which allows for the removal and release of students during school hours by law enforcement or CPS with a written administrative or court order of custody and proper identification. *Id*. at ¶ 3. After being released from school, J.G. and N.G. were transported directly to the Yakima DCFS Office. *Id*. at ¶ 19. J.G. and N.G. were placed in the custody of their father, Mr. Geerhart, that evening. *Id*.

On October 28, 2014, CPS social worker Francesca Guzman visited East Valley Elementary School for a follow-up meeting with J.G. and N.G. *Id*. at ¶ 20.

---

[3] The parties dispute which East Valley Elementary School employee was present when N.G. and J.G. were released and which CPS worker picked up the children from school. ECF Nos. 63 at ¶19; 69 at 6-8. However, there is no dispute that a school administrator was present when the children were released and it was a CPS employee that took custody of the children.

The purpose of the meeting was to check on the children's welfare prior to closing their case file. *Id*. J.G. agreed to meet with Ms. Guzman. *Id*. After Ms. Guzman's meeting with J.G., CPS closed the case file.

Although she does not remember the event, Lisa Bartheld, the school counselor at East Valley Elementary School, states that she may have been present when Ms. Guzman arrived at school on October 28, 2014. *Id*. at ¶ 21. At that time, the general practice was that Ms. Bartheld would sit in on student interviews at the student's request if she was present and available. *Id*. at ¶ 22. If she did sit in on a student interview, Ms. Bartheld would not ask the student questions, take notes, or otherwise participate during the interview. *Id*.

During the 2014-2015 school year, the school nurse at East Valley Elementary School, Melody Ann Luke, treated N.G. for asthma attacks on 13 separate occasions. ECF 63 at ¶¶ 24-27. On February 10, 2015, N.G. came to Nurse Luke's office wheezing, apparently brought on by exercise. *Id*. at ¶ 28. Ms. Luke administered two puffs from N.G.'s prescribed inhaler, which was kept in the Nurse's office. *Id*. at ¶ 29. Although exercise was a trigger for N.G.'s asthma attacks, the order on the inhaler indicated no pretreatment with the inhaler prior to exercise. *Id*. at ¶ 30. Ms. Luke sent a fax to N.G.'s doctor to clarify whether N.G. should be pretreated. *Id*. at ¶ 31. She did not receive a response from N.G.'s doctor and never pretreated N.G. with the inhaler prior to exercise without parental

consent.[4]  On February 23, 2014, Mr. Geerhart arrived at school and complained about N.G.'s doctor being contacted directly.  *Id*. at ¶ 32.  Mr. Geerhart explained that N.G. should not be pretreated with the inhaler for asthma, but instead treated only for asthma attacks that had already occurred.  *Id*.  Ms. Luke made a notation of the parent instructions in her records.  *Id*.  On the 13 occasions that she treated N.G. with the inhaler during the 2014-2015 school year, Ms. Luke never pretreated N.G. without a parent request to do so.  *Id*. at ¶ 33.

## DISCUSSION

Before reaching the merits of the parties' summary judgment arguments, the Court first considers Plaintiffs' Motion to Strike (ECF No. 64).  The threshold issue is whether certain disputed documents may properly be considered in deciding the School District Defendants' pending motion for summary judgment. Plaintiffs argue that the Court should strike two allegedly fraudulent documents from the record or, alternatively, impose appropriate sanctions on the School District Defendants for alleged discovery abuse or pursuant to Federal Rule of Civil Procedure 56(h).  ECF No. 64 at 10.  The School Defendants filed an

---

[4]     Ms. Luke pretreated N.G. with the inhaler on one occasion when Mr. Geerhart specifically requested that Ms. Luke treat N.G. prior to running.  ECF No. 63 at ¶¶ 31, 33.

objection to Plaintiffs' Motion to Strike, arguing that Plaintiffs fail to provide any evidence of fraud or discovery violations. ECF No. 73 at 1-2.

## I. Plaintiffs' Motion to Strike

As discussed, Plaintiffs move the Court to strike two allegedly fraudulent documents from the record—the Child Custody Transfer document provided by the School District Defendants as part of their initial disclosures in August 2017 (ECF No. 64, Ex. B) and the Child Custody Transfer document attached to Staci Foster's declaration in support of Defendants' Motion for Summary Judgment (ECF No. 64, Ex. A), which was originally produced by DSHS in 2014. Because the documents purport to be the same Child Custody Transfer form but contain visible differences, Plaintiffs allege that the School District Defendants must have engaged in "deception and attempted fraud upon the court, discovery abuse, violation of agreed protocols for preservation, inspection and testing material evidence, and spoliation of evidence." ECF No. 64 at 2. For the reasons discussed below, the Court denies Plaintiffs' request to strike the disputed documents. The Court also denies Plaintiffs' request for sanctions.

Under Federal Rule of Civil Procedure 12(f), courts are permitted to strike any "redundant, immaterial, impertinent, or scandalous matter" found to exist in a pleading. Fed. R. Civ. P. 12(f). Here, the disputed documents are not "pleadings," and the Court is therefore not authorized to strike the documents under Rule 12(f).

The Court does have authority, however, to determine whether the documents may be relied on in ruling on the pending motion for summary judgment.

Plaintiffs argue that both versions of the Child Custody Transfer document should be stricken from the record because the documents are fraudulent. ECF No. 64 at 2-3. To support this claim, Plaintiffs point out that there are now two different versions of the same Child Custody Transfer document in the record: the version provided by the School District Defendants in discovery, which does not contain Ms. Foster's signature or a checked box next to RCW 13.32a.050 (ECF No. 64, Ex. B), and the version provided by DSHS in 2014, as attached to Ms. Foster's declaration in support of Defendants' Motion for Summary Judgment, which contains Ms. Foster's signature and a checked box next to RCW 13.32a.050 (ECF No. 64, Ex. A). Plaintiffs allege that these differences conclusively establish fraud on the part of the School District Defendants. *Id.*

The Court acknowledges that there are slight differences between the two versions of the Child Custody Transfer document, but ultimately finds these differences insufficient to establish fraud and not material to the disposition of this case. Plaintiffs' provide allegations of perjury and falsified documentation, but fail to offer evidence to support these claims. Notably, most of Plaintiffs' allegations focus on two former defendants from previously dismissed lawsuits—Ms. Foster Deputy Hull—not the School District Defendants. As argued before, Plaintiffs

contend that the Child Custody Transfer document in DSHS's possession is fraudulent because Deputy Hull incorrectly checked "p.m." instead of "a.m." and listed all four children at home when two were at school. *Id*. at 3. Plaintiffs also challenge Deputy Hull's probable cause determination and accuse Ms. Foster of fraud and perjury because she signed the allegedly fraudulent document. *Id*. To the extent that Plaintiffs' allegations focus on former defendants, the Court finds that Deputy Hull and Ms. Foster's involvement is not at issue here and thus these facts are not relevant.

Moreover, the differences between the two documents—i.e., the presence of Ms. Foster's signature and the checked box next to RCW 13.32a.050—are not material to this case. The document's importance is only that Deputy Hull made a finding of probable cause and took custody of all four children who were residing with Mr. Lyons, he then transferred legal custody of the children to CPS, and the School District Defendants were presented with a copy of the Child Custody Transfer document to facilitate the release of N.G. and J.G. from school. Only Deputy Hull had authority to take and transfer custody of the children, and his signature appears on both documents. The presence of Ms. Foster's signature is immaterial. Likewise, regardless of whether the box next to RCW 13.32a.050 is checked or unchecked, the Dependency Petition filed in Yakima County Superior Court clarifies that "[d]ue to the eminent risk of harm to the children, and the

inconsistent story, Yakima Sheriff Deputy Hull took protective custody off all four children ...." ECF No. 29 at 10 (Ex. A). For these reasons, the Court finds that the Child Custody Transfer document provided by the School District Defendants in discovery (ECF No. 64, Ex. B) and the version attached to Ms. Foster's declaration (ECF No. 64, Ex. A) are admissible and may properly be considered in connection with the School Defendants' pending Motion for Summary Judgment.

As an alternative to striking the disputed documents, Plaintiffs seek sanctions against the School District Defendants for alleged discovery abuse. ECF No. 64 at 7-8. Rule 37(c)(a) allows the court to impose sanctions when a party fails to disclose required information under Rule 26(a) or (e). Fed. R. Civ. P. 37(c)(a). Here, Plaintiffs appear to argue that the School District Defendants consciously withheld the Child Custody Transfer document in their possession in an attempt "to obstruct Plaintiff's discovery and ability to prove the elements of this case." ECF No. 64 at 7. The School District Defendants respond that Plaintiffs received copies of both disputed documents in a timely fashion through discovery. ECF No. 73 at 3.

The Court finds that Plaintiffs' request for discovery-related sanctions is inappropriate. Stated simply, Plaintiffs have failed to demonstrate that the School District Defendants intentionally withheld or concealed any discovery. Plaintiffs do not dispute that the School District Defendants produced the Child Custody

Transfer document in their possession as part of their initial disclosures, as required under Federal Rule 26(a). Plaintiffs also concede that they received DSHS's copy of the Child Custody Transfer document, as attached to Ms. Foster's declaration, in 2014. Because Plaintiffs do not offer any evidence of discovery abuse or spoliation on the part of the School District Defendants, the Court denies Plaintiffs' request for discovery-related sanctions.

Finally, insofar as Plaintiffs seek sanctions under Rule 56(h), the Court finds that sanctions are not appropriate as Plaintiffs fail to establish that the School District Defendants or their attorney submitted Ms. Foster's declaration in bad faith. ECF No. 64 at 4. Under Rule 56(h), if the Court is satisfied that an affidavit or declaration used to support a motion for summary judgment was submitted in bad faith, the Court has discretion to impose appropriate sanctions on the offending party or attorney. Fed. R. Civ. P. 56(h). Although the term "bad faith" is not defined in the Federal Rules, as used in Rule 56 the phrase indicates actions taken without any colorable legal or factual basis. *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir. 1985). Plaintiffs argue that the Child Custody Transfer document attached to Ms. Foster's declaration is fraudulent and was therefore submitted in bad faith. ECF No. 64 at 4. The Court finds conclusory allegations of fraud insufficient to evidence bad faith conduct, and denies Plaintiffs' request for sanctions under Rule 56(h).

1    In short, the Court denies Plaintiffs' request to strike the disputed documents

2    or impose sanctions on the School District Defendants.  Having deciding this

3    threshold issue, the Court now turns to the merits of the parties' summary

4    judgment arguments.

5    **II.  School District Defendants' Motion for Summary Judgment**

6          Summary judgment is appropriate when "there is no genuine dispute as to

7    any material fact and the movant is entitled to judgment as a matter of law."  Fed.

8    R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court views the

9    facts, as well as all rational inferences therefrom, in the light most favorable to the

10   non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The Court can only

11   consider admissible evidence.  *Orr v. Bank of America*, NT & SA, 285 F.3d 764

12   (9th Cir. 2002).

13         The party moving for summary judgment bears the initial burden of showing

14   the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477

15   U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify

16   specific facts showing there is a genuine issue of material fact.  *Anderson v.*

17   *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  There must be evidence on which a

18   jury could reasonably find for the plaintiff and a "mere existence of a scintilla of

19   evidence in support of the plaintiff's position will be insufficient."  *Id*. at 252.  For

20   purposes of summary judgment, a fact is "material" if it might affect the outcome

of the suit under the governing law. *Id.* at 248. A material fact is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.*

**A. Section § 1983 Claims**

Plaintiffs primarily argue that the School District Defendants' participation in CPS's child abuse investigation violated their rights under the Constitution. Specifically, Plaintiffs assert First, Fourth, and Fourteenth Amendment claims arising from the School Defendants' participation in the CPS interviews of J.G. and N.G. on school grounds and CPS's removal of J.G. and N.G. from school. ECF No. 12 at 21-28. Plaintiffs also assert constitutional violations resulting from the School Defendants' medical treatment of N.G. during the 2013-2014 school year. *Id*. at 28-30. Finally, Plaintiffs assert a *Monell* claim premised on Defendant East Valley School District's policies that permit school employees to observe CPS interviews of students and to release students into the custody of law enforcement or CPS with a written administrative or court order of custody and proper identification. *Id*. at 28-30. The School District Defendants move for summary judgment as to all of Plaintiffs' federal claims. ECF No. 54 at 1.

Under 42 U.S.C. § 1983, a cause of action may be maintained "against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws,' of the United States." *S. Cal.*

*Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). This statute is designed to protect individuals from an abuse of state power by providing a cause of action against state and local officials who, acting within the scope of their duties, have deprived an individual of a cognizable federal right. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979). The rights guaranteed by § 1983 are "liberally and beneficially construed." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 684 (1978)). "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains.'" *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (brackets and emphasis omitted) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

## 1. Individual Defendants are Protected by Qualified Immunity

Qualified immunity shields government officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The defense of qualified immunity serves the dual purpose of holding public officials accountable when they exercise power irresponsibly and

shielding public officials from harassment, distraction, and liability when they perform their duties reasonably.  *Id*.  When properly applied, the rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In deciding whether a government official is protected by qualified immunity, a court must assess (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. 223.  A court may, within its discretion, decide which of these two prongs should be addressed first in light of the particular circumstances of the case.  *Pearson*, 555 U.S. at 236.  If the answer to either inquiry is "no," the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct.  *Glenn v. Washington Cty.*, 673 F.3d 864, 870 (9th Cir. 2011).

Here, Plaintiffs assert First, Fourth, and Fourteenth Amendment claims against the individual School Defendants.  Viewed in the light most favorable to Plaintiffs, this Court finds that the facts alleged fail to show that the individual

School Defendants violated Plaintiffs' constitutional rights. As such, all of the individual School Defendants are entitled to qualified immunity.

### a. Coleen Crowston and Lisa Bartheld

Plaintiffs assert First and Fourteenth Amendment claims against Ms. Crowston and Ms. Bartheld for their participation in the CPS interviews of J.G. and N.G. at East Valley Elementary School on September 12, 2014 and October 28, 2014. Plaintiffs also assert unlawful seizure under the Fourth Amendment.

Regarding Plaintiffs' First and Fourteenth Amendment claims, the Court finds that Ms. Crowston and Ms. Bartheld are entitled to qualified immunity. The Fourteenth Amendment protects the right of parents and children to live together without governmental interference by guaranteeing that children and parents will not be separated by the state without due process of law except in an emergency. *Wallis v. Spencer*, 202 F.3d 1126, 1136-37 (9th Cir. 2000). Here, however, neither Ms. Crowston nor Ms. Bartheld were involved in the decision to separate J.G. and N.G. from Ms. Lyons and Mr. Teeman. Ms. Crowston sat in on the initial CPS interviews at the request of J.G. and N.G., but did not initiate the student interviews or participate in questioning the students. ECF No. 63 at ¶ 8. Likewise, assuming Ms. Bartheld sat in on CPS's follow-up meeting with J.G., she did not have the authority to initiate the interview or participate in questioning. *Id*. at ¶ 22. Viewing the undisputed material facts in the light most favorable to Plaintiffs, this

Court finds no violation of Plaintiffs' constitutional rights of familial association under the First and Fourteenth Amendments.

As to Plaintiffs' Fourth Amendment claim of unlawful seizure of J.G. and N.G., the Court finds that Plaintiffs' do not have standing to bring this claim. The Fourth Amendment protects a child from being subject to an unreasonable search or seizure. *Wallis*, 202 F.3d at 1137 n.8. Absent parental consent, a court order, or exigent circumstances, seizure of a child violates the child's Fourth Amendment rights. *Id*. at 1138. Importantly, because Fourth Amendment rights are personal rights, "the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). A parent has no standing to challenge a violation of his or her child's Fourth Amendment rights. *Mabe v. San Bernadino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001). Here, Plaintiffs do not join their children in this suit. Therefore, Plaintiffs, as parents, do not have standing to assert this Fourth Amendment claim.

The Court need not consider any clearly established law, as there were no constitutional violations of Plaintiffs' First, Fourth, or Fourteenth Amendment rights. Accordingly, the Court finds that Ms. Crowston and Ms. Bartheld are protected by qualified immunity and summary judgment is appropriate on these claims.

### b. Carolyn Sauve

Plaintiffs assert that Ms. Sauve violated J.G. and N.G.'s civil rights "guaranteed to them under the Constitution, the Federal Family Education Act, and Privacy laws of the State of Washington" when Ms. Sauve released "constitutionally protected information over the phone" regarding N.G. and J.G.'s presence at school on September 12, 2014. ECF No. 12 at 3.

The Court finds that Ms. Sauve's conduct did not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231. Plaintiffs appear to allege that Ms. Sauve's conduct violated the Constitution, but fail to identify any cognizable constitutional interest in this regard. And, to the extent that Plaintiffs' allege a violation of the Federal Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, FERPA's nondisclosure provisions do not confer individual rights enforceable by § 1983. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002).

The Court need not consider any clearly established law, as there were no constitutional violations of Plaintiffs rights. Accordingly, the Court finds that Ms. Sauve is protected by qualified immunity and summary judgment is appropriate on this claim.

//

//

### c. Melody-Ann Luke

Regarding Ms. Luke, Plaintiffs assert constitutional violations under the First and Fourteenth Amendments for familial association arising from Ms. Luke's conduct as the school nurse at East Valley Elementary School.  ECF No. 12 at 7-8. Specifically, Plaintiffs contend that Ms. Luke interfered with their constitutional right to make heath care decisions for their children when Ms. Luke sent a fax to N.G.'s doctor seeking clarification as to whether N.G. should be pre-treated for asthma.  *Id*.  In Plaintiffs' words, "Ms. Luke took it upon herself to take charge of N.G.'s medical care" and "any reasonable nurse who felt that a prescription which needed changed would know it is unlawful to take it upon themselves to fax a doctor to have said prescription changed."  *Id*. at 7.

While parents generally "have the right, coupled with the high duty" to make judgments concerning their children, which includes deciding whether to seek and follow medical advice, this Court finds that Ms. Luke's conduct did not infringe upon Plaintiffs'' ability to exercise this right.  *Parham v. J.R.*, 442 U.S. 584, 602 (1979).  Though Ms. Luke contacted N.G.'s doctor to inquire about the possibility of pre-treating N.G. with the inhaler, at no point did Ms. Luke alter N.G.'s medical treatment or go against Plaintiffs' instructions regarding N.G.'s medical care.  ECF No. 63 at ¶¶ 31-33.  On the 13 occasions that Ms. Luke treated N.G. with the inhaler, Ms. Luke administered treatment in accordance with Plaintiffs'

instructions and never pretreated N.G. without a parent request to do so.[5]  ECF No.

63 at ¶ 33.  Because Plaintiffs' right to make health care decisions for their

children was unaffected by Ms. Luke's actions, Plaintiffs fail to show that Ms.

Luke's conduct violated their constitutional rights.  Further, Plaintiffs lack standing

to assert this claim because they did not suffer "an 'injury in fact.'"  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

     The Court need not consider any clearly established law, as there were no

constitutional violations of Plaintiffs rights.  Accordingly, the Court finds that Ms.

Luke is protected by qualified immunity and summary judgment is appropriate on

this claim.

**2. East Valley School District**

     Plaintiffs allege that Defendant East Valley School District violated their

constitutional rights by allowing CPS to conduct "illegal interviews" of N.G. and

J.G. on school grounds, "aiding and abetting in the illegal seizure of N.G. and

J.G.," and releasing N.G. and J.G. to CPS without a warrant or exigent

circumstances.  ECF No. 12 at 3.  Plaintiffs also assert a *Monell* claim, arguing that

---

[5]    As noted, Ms. Luke pretreated N.G. with the inhaler on one occasion, where

Mr. Geerhart specifically requested that Ms. Luke pretreat N.G. prior to running.

ECF No. 63 at 7, ¶33.

Defendant East Valley School District implemented an unconstitutional policy that resulted in a deprivation of their constitutional rights. *Id*. at 28-33. As the basis of their *Monell* claim, Plaintiffs cite the District policy permitting school personnel to observe CPS interviews with students and to release students into the custody of law enforcement or CPS. *Id*. at 28-33.

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that Plaintiffs fail to produce sufficient evidence to create a genuine issue of material fact as to whether Defendant East Valley School District violated their constitutional rights by allowing CPS to conduct the student interviews on school grounds and permitting CPS to remove N.G. and J.G. during the school day. As discussed, in regards to the allegedly unlawful student interviews, the School Defendants are not liable for any constitutional violations of separating the family or due process as they had no authority to and did not initiate the interviews or participate in questioning the children. In a similar vein, the School Defendants had no legal authority to decide or participate in the decision to take custody of Plaintiffs' children and transfer that custody to CPS. Only Deputy Hull had such authority. Finally, insofar as Plaintiffs allege a Fourth Amendment violation against Defendant East Valley School District, Plaintiffs do not have standing to bring this claim.

1    Turning to Plaintiffs' *Monell* claim, Plaintiffs contend that the District

2    policies permitting school employees to (1) observe CPS interviews of students

3    without parental consent, and (2) release students into the custody of law

4    enforcement or CPS, are unconstitutional and deprived Plaintiffs' of their

5    constitutional rights.  ECF No. 12 at 29-31.  Under *Monell*, it is only when an

6    official government policy causes its employees or agents to violate another's

7    constitutional rights that the government as an entity is liable under § 1983.  436

8    U.S. at 694.  Importantly, the official policy must be the moving force behind the

9    constitutional violation.  *Id*. The causation element is essential to sustain a *Monell*

10   claim.

11   The Court finds that Plaintiffs fail to produce sufficient evidence to create a

12   genuine issue of material fact as to whether Defendant East Valley School District

13   implemented an unconstitutional policy that resulted in a deprivation of Plaintiffs'

14   constitutional rights.  For reasons already discussed, Plaintiffs have not come

15   forward with admissible evidence to demonstrate a triable issue as to any of their

16   constitutional causes of action.  As such, contrary to the Plaintiffs' contentions, the

17   School Defendants' conduct did not result in a violation of their constitutional

18   rights.  This finding is determinative of Plaintiffs' *Monell* claim.  Under *Monell*,

19   § 1983 liability cannot attach without an underlying constitutional violation.  436

20   U.S. at 694.  The Court need not consider the constitutionality of the District

policies, as there were no constitutional violations of Plaintiffs' rights. Accordingly, the Court finds that summary judgment for the School Defendants is warranted on Plaintiffs' *Monell* claim.

In short, the Court determines that summary judgment on these federal claims is warranted given that the School Defendants are entitled to qualified immunity and Plaintiffs have not come forward with admissible evidence to demonstrate a triable issue at to any one of these federal causes of action.

## B. State Law Claims

Plaintiffs also assert several state law claims against the School Defendants, including intentional infliction of emotional distress, assault, battery, false imprisonment, abuse of process, invasion of privacy, declaratory relief, negligence, and violation of "State Civil Rights." ECF No. 12 at 2.

The School District Defendants argue that Plaintiffs' state law claims should be dismissed for failure to submit a tort claim at least sixty days before filing suit, as required under state law. ECF No. 54 at 16. In Washington, a local government entity may be liable for damages arising from its tortious conduct to the same extent as if it were a private person or corporation. RCW 4.96.010(1). However, pursuant to RCW 4.96.020, prospective plaintiffs must file a tort claim with the

local government at least 60 days prior to filing a lawsuit.[6]  The purpose of this claim filing statute is "to allow government entities time to investigate, evaluate, and settle claims" before they are sued.  *Medina v. Pub. Util. Dist. No. 1,* 147 Wash. 2d 303, 310 (2002).  The claim filing statute is to be liberally construed such that substantial compliance is satisfactory.  *Lee v. Metro. Parks Tacoma*, 183 Wash. App. 961, 968 (2014).  In this context, substantial compliance means that the "'statute has been followed sufficiently so as to carry out the intent for which the statute was adopted.'"  *Id.* at 967–68 (quoting *Banner Realty, Inc. v. Dep't of Revenue*, 48 Wash. App. 274, 278 (1987)).  However, failure to comply with the statute is grounds for dismissal.  *Mercer v. State*, 48 Wash. App. 496, 498 (1987).

By the plain language of RCW 4.96.020, Plaintiffs' state law claims against Defendant East Valley School District and its employees are subject to RCW 4.96.020's notice requirement.  Plaintiffs do not allege otherwise.  Nor do Plaintiffs dispute the fact that they failed to provide the required notice.  According

---

[6]     According to RCW 4.96.020, "[a]ll claims for damages against a local governmental entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity, shall be presented to the agent within the applicable period of limitations within which an action must be commenced."  RCW 4.96.020(b).

to East Valley School District policy, the Superintendent of East Valley School District receives and reviews notices of tort claims. ECF 57 at ¶ 5. The Superintendent has never received a notice of tort claim from Plaintiffs or from anyone else on their behalf. *Id.* at ¶ 6. In their response brief, Plaintiffs do not assert that they filed the required notice, nor do they provide any evidence to contradict the School Defendants' evidence that no notice was received. ECF No. 68.

The Court finds that there is no genuine dispute that RCW 4.96.020's notice requirement applies to all of Plaintiffs' state law tort claims against all of the School Defendants in this matter, and Plaintiffs were therefore required by RCW 4.96.020 to provide a notice of tort claim to Defendant East Valley School District and then to wait sixty days before commencing suit. Plaintiff undisputedly did not provide the required notice. Thus, Plaintiffs have failed to substantially comply with RCW 4.96.020's requirements and dismissal of Plaintiffs' state law tort claims is appropriate.

Finally, the School District Defendants assert that Plaintiffs are not entitled to declaratory or injunctive relief. ECF No. 54 at 15-16. The School Defendants argue that although Plaintiffs label their claim as one for declaratory relief, what Plaintiffs really seek is a preliminary injunction. *Id.* at 15. The School Defendants contend that equitable relief is inappropriate because the Plaintiffs cannot prove the

elements required to obtain a preliminary injunction, including a likelihood that they will succeed on the merits and suffer irreparable harm in the absence of injunctive relief. *Id.* at 15-16; *Int'l Francise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015). Plaintiffs do not address this issue in their response. ECF No. 68. The Court dismisses Plaintiffs' claims for declaratory or injunctive relief as the School Defendants are entitled to summary judgment on all claims and thus no declaratory or injunctive relief is available.

Accordingly, the Court finds that summary judgment on these state law claims is warranted. Plaintiffs failed to substantially comply with RCW 4.96.020's requirements and Plaintiffs have not come forward with admissible evidence to demonstrate a triable issue as to any one of these causes of action.

Having found that summary judgment is warranted in favor of the School District Defendants, the Court denies as moot Plaintiffs' Motion for Summary Judgment (ECF No. 68). The School Defendants' Motion to Strike (ECF No. 74) and Motion in Limine (ECF No. 81) are also denied as moot.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiffs' Motion to Strike (ECF No. 64) is **DENIED**.

2.  School Defendants' Motion for Summary Judgment (ECF No. 54) is **GRANTED**.

3.  Plaintiffs' Motion for Summary Judgment (ECF No. 68) is **DENIED as moot**.

4.  School Defendants' Motion to Strike (ECF No. 74) is **DENIED as moot**.

5.  School Defendants' Motion in Limine (ECF No. 81) is **DENIED as moot**.

The District Court Executive is directed to enter this Order and Judgment for Defendants accordingly, furnish copies to counsel, and **CLOSE** the file. The deadlines, hearings and trial date are **VACATED.** Each party to bear its own costs and expenses.

**DATED** September 12, 2018.



THOMAS O. RICE
Chief United States District Judge